Good morning, your honors. May it please the court. My name is Edward Ruttenberg. I represent the appellants Sweetpea Entertainment, Inc. and Sweetpea BVI, Ltd. I'd like to reserve five minutes for rebuttal. There is also a third appellant that was named Sweetpea Entertainment Corporation, which is the signatory to the guild agreement. That entity was not a party to the arbitration proceeding below that we're referring to here, if you look at page 37 of the excerpts, and therefore that should not really be a party to this appeal. When I refer to the appellants, therefore, I'm referring to the two non-signatory appellants that I first named. In this case, the district court did not reach the merits of the appellant's position that they were not bound by the guild's arbitration provision, to which they were not signatories. Rather, the district court confirmed the arbitrator's finding in a single sentence at excerpt page 70, where it found that appellants, quote, consented to have the arbitrator determine that the dispute was arbitrable. From your client's perspective, does this case, or from both sides, does the case rise or fall on whether there was a specific objection made at the onset of the arbitration proceedings to the arbiter exerting jurisdiction over your clients? No, not expressly. That would be one of the considerations. But the test is whether or not there was clear and unmistakable waiver by my clients of its right to independent judicial review. And in this case, the district court, although it found consent, the fact of the matter is I believe I can show that that finding was clearly erroneous, particularly when it's considered that the arbitrator himself found that there was no clear and unmistakable waiver. To the contrary, the appellant's rights were reserved to seek independent judicial review, judicial determination. There's no requirement in the law that a party in your client's circumstance make a specific objection? Yes. The overall conduct is looked at as to whether or not there is this consent to judicial determination. But in our case, we did make the objection as well. And considering all of the circumstances and that objection, we preserved our rights. In fact, what happened in this case is my clients are not signatories to the guild agreement. And they were named in the complaint. A brief was filed by the guild that claimed that they were bound. My clients objected to that, filed a brief objecting to jurisdiction over them. And then the arbitrator issued his opinion in an oral opinion. I think it's excerpts pages 34 to 61, where he said the record's closed, here's my opinion on that, and I don't want to hear from you anymore, but here's what I have to say with regard to this issue. And, by the way, after objecting to the proceeding, my clients took no further, made no further participation in the proceedings. They did not appear with regard to the merits. Now, the first thing that the arbitrator himself acknowledged in his opinion was that appellants had expressly challenged his, quote, authority to even reach the question of party jurisdiction here, because that is a matter only for the courts to determine, unless the parties had expressly given that authority to the arbitrator. And appellants say there is no such express grant of authority here. Therefore, I am not empowered to even reach that issue, and, therefore, the matter should end right there, excerpts at 38. That's the arbitrator stating what my client's position was, which was that he had no authority to decide the issue, that he had no jurisdiction. Second in this case, the Guild Agreement itself provides in Article 11D that my client's participation in the arbitration hearing does not waive their rights. That section states, quote, the party contesting arbitration or jurisdiction shall not, by proceeding to a determination of the merits of such arbitration, be deemed to have waived its position that the dispute is not arbitrable or that the arbitrator does not have jurisdiction. That's the excerpts at page 15. So the Guild Agreement itself, which is what the arbitrator under which he claimed his authority, says that by proceeding we did not waive our rights. Can I ask you something? You have this basic agreement, right? Yes. It says, this basic agreement shall be binding upon the company and all parties who, by reason of assignment or the like, shall succeed to or become entitled to a substantial part of the business of a signatory. Now, your clients were assinees, right? My clients entered into a contract with a signator. But weren't they assinees of the signator's rights? They obtained certain of the rights, yes. Then you go on and it goes on to say, Article I, looking at the basic agreement, grievance arbitration rules and procedures provide only the company and the Guild shall be parties. But the company, doesn't a company include the assignees of the company? Absolutely not, Your Honor. A company is a signator under the express provisions of the agreement, of the Guild Agreement, and the arbitrator recognized that in the excerpts at page 46. He acknowledged company means signatory. Parties bound by this basic agreement provides, this basic agreement, be binding upon the company and all parties who, by reason of assignment, shall succeed to or become entitled to a substantial part of the business of the signatory. Your Honor. And they became entitled to a substantial part of the business of the signatory, didn't they? I have two points in that regard. The answer is, number one, what you appear to be getting to, first of all, the agreement under which they obtained certain rights did not contain an arbitration provision or acknowledge that the non-signatories would be bound by the Guild Agreement. And second, when I said before that they bound by notice of this basic agreement, this MBA, the Guild takes the position that they're bound, but they're non-signatories, and so the standard is not what the Guild says, but whether or not we've indicated a clear and unmistakable. Did they have notice of this basic agreement? Yes. They had it. Yes. But the fact of the matter is, and when I answered your question before, I misspoke somewhat. When I said that the Guild provision does not bind non-signatories, the Guild takes the position that it can bind certain non-signatory parties. However, what I meant to say, and I'll clarify, is that the arbitration provision itself is limited to signatories and the Guild and does not cover non-parties who the Guild claims to have been bound. With regard to the issue of consent, however, which is the only basis that the district court addressed in its confirmation of the arbitration award, it didn't reach the issue of whether or not our contracts with the signatory were of the kind that might provide the kind of exception to a non-signatory being bound that Your Honor addressed in his dissent in the Carpenter's case, the exceptions that relate to whether there's an alter ego or whether or not there's a contract. The district court did not address that, did not affirm the arbitrator's finding in that regard. All it found was that we had consented, and the issue before this court is that that finding of consent was clearly erroneous, because our rights were preserved. We participated only in a challenge to the jurisdiction, and the district court's finding of consent, in fact, went against the arbitrator's own finding, where the arbitrator said, quote, at excerpts at 46, once you have timely raised the jurisdiction question, and if you get an adverse ruling, and you go to the question on the merits and you lose, you don't waive your right to go to court if you wish to have de novo, the first question of jurisdiction reexamined. There's no waiver of that, and there's no waiver of that in this case anyway. I want to make that clear. The arbitrator said, you don't waive it, you really don't waive it, and I want to make that clear. And so the issue here is that was the basis for the district court decision, and the district court decision was clearly erroneous. We did not waive our rights. We preserved our rights. If you look at this case compared with the cases of George Day and Carpenters, we fall on the side where we preserved our rights. We preserved our, I believe, also, considering Judge Pragerson's dissent in Carpenters, the basis for that was in that case the appellants had only preserved notice and hadn't preserved jurisdiction. We've preserved jurisdiction. In Judge Pragerson's dissent in Carpenters, he indicated that the appellants there had not preserved their rights. They had not stated a preservation of their rights. They had not done so in George Day. We have, and therefore all of these cases, be it the Carpenters majority, the Carpenters dissent, or George Day, support the appellants in this case that we did not waive our right to independent judicial review and were entitled to independent judicial review on the issues such as whether or not these contracts are such that we might be bound by this agreement. The district court never reached that. That, at a minimum, I believe, entitles us to a remand. However, in this case, as I alluded to before, the provisions in the guild arbitration agreement itself provide only that the parties to the arbitration are to be the company and the guild. It doesn't say parties bound by the agreement. And company is defined, and the arbitrator recognized that company was defined as signatories. Excerpts at page 46. In fact, in order to find that we, that the non-parties were bound under his other theory of these contracts, he had to make a distinction between parties bound by the agreement, who could be non-signatories, and signatories, who are referred to as companies. And it was only by doing this, by showing that, in his opinion, the appellants were parties to the agreement, was he able to say that we would be bound by it. But even if that's true, and even if my clients were bound by this agreement, I say they were not, but that's not the issue here before the court with regard to the assignment or the contract. But even if we were bound by the guild agreement, we're not bound by the arbitration provision, because the guild agreement separates when parties are bound versus when companies are bound, and the arbitrator himself made that distinction. Yes, Your Honor. Let me ask this question. Was your client, were your clients represented by counsel at the onset of the arbitration proceedings? My clients were represented by counsel when they filed their brief objecting to the arbitrator's jurisdiction, and my clients were represented, and counsel was called when the court, when the arbitrator, rather, issued his oral opinion, he decided to call the parties and have a telephonic hearing where he gave his opinion, and when he did so, he called attorneys both for the guild and for my clients who were on the phone when he issued his decision that's reflected in the excerpts. I guess my question is, was there an opportunity for your client to ask the arbiter to stay or adjourn those proceedings while your client sought a judicial declaration that you were not bound by the agreement or the arbitration clause? Well, the only, all that happened in that proceeding was that he made the determination with regard to jurisdiction. He did not address the merits at all at that time, and so it was, and it was after that that we filed. If I understand correctly, the arbiter calls the guild and counsel for sweet pea. Yes. And says I've reached a decision on whether I have jurisdiction in this arbitration proceeding over sweet pea. Yes. And my conclusion is that I do. Yes. So at that point, your client could have said, time out, please don't go any further, I move that you stay, adjourn, whatever, while I seek a judicial declaration that I'm not so bound. We didn't feel a need to do that, because that was all we were going to participate in, those appellants. And once we did that, we were going to challenge this on confirmation of the award, which we have a right to do without waiving our rights, and we did. And the district court then only said, you consented and never reached the merits, and then now we're here. I would ask that your honors take a look with regard to my second point. My first point was that this should be remanded so the district court addresses whether or not we are bound on the merits. But beyond that, I believe that if you look at articles 10A, for example, of the guild agreement, and that's at the excerpts at page two, that it clearly says that the arbitration should be limited to the company and the guild. The following matters shall be submitted to arbitration, and no other matters shall be submitted to arbitration. Any dispute between the guild and the company. The arbitrator himself drew the distinction between companies and parties. Again, I believe that's at the excerpts at page 36. This would be a good device, then, to cut out any benefits that the writers might have in that arbitration agreement that the guild entered into. Well, we don't know that yet, because we haven't addressed the merits. Depending on what the arguments are with regard to the contract, that's something the district court can address. But that's what should happen. It should be addressed in the district court. If they have the arbitration, the writers, I'm assuming, want the arbitration. And that's why the guild that represents them enters into that. They don't want to have to go to court where they've got to hire $500-an-hour lawyers. Because writers, as a group, they're not making a lot of money. And some do, but most probably don't. So this would be an easy way. The SEC, they've got the rights to make this screenplay, and then they hire the writers, and the writers work on this, and then it's assigned to these other entities. And the writers knew about the agreement with the guild, and they felt that that was giving them protection. But you say that they were wrong. They're living in another world. We're not talking about whether they're entitled to protection. We're talking about whether a non-signatory party is entitled to have his case heard by the court, rather than by an arbitration proceeding before the guild when he's not a signatory to it. But he takes those rights with knowledge of the guild agreement. This depends on the contents of the contract, which is not before this court now. But it's like buying a piece of property that's encumbered, or you've got an equitable lien on it. You can use that concept as well. If the nature of the contract is such that my client should be bound by it, then that would be determined later at a hearing on the merits before the district court, who might determine we fall within one of the exceptions, but we haven't reached that point yet. Wouldn't that be something for the arbitrator to decide? No, because the arbitrator does not have the authority in the first instance, because we have not by clear and unmistakable... The arbitrator could read all that language and conclude that it has jurisdiction. He's going... Whether or not we've consented depends on our clear and unmistakable action. This would be converting the merits into the consent issue. Well, your client argued that it was non-arbitrable. Yes. So they were there. Yes, we were there, and we argued he had no jurisdiction. That's correct. I would just ask, Your Honors, also, if you look at Article 11A.1.B... Why even go there? Why even attend? Because we have a right to challenge that, and if we prevail, we wouldn't be bothering Your Honor here or the district court. And that would be something that would be efficient. I would ask that you also look at Article 11A.1.B, which says, with exceptions not applicable, only the company and the guild shall be parties to the arbitration. I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Emma Laney on behalf of the Writers Guild, the appellee here. I believe it is still morning. It still is. At the outset, I'd just like to clarify a couple of factual matters that I think are very... Let's keep it that way, too. ...that I think are very important. And one of the key facts here is what took place at the arbitration. And that's at the record, starting at page 34, there is a transcript of the first day of the arbitration. This was not a teleconference. It was not an appearance by telephone. I was present, along with another attorney for the Writers Guild. The hearing took place at the guild offices. Two attorneys appeared in person on behalf of all three Sweet Pea Companies, and a court reporter was present. The confusion arises because the arbitrator, who resides outside Southern California, requested of the parties that he appear by telephone, which he did. What's that E.R. you just gave us? It begins at page 34, and you can see that the appearances are read into the record, and there's a note on page 35 that only the... That's all he said. It was a telephonic hearing. I mean, if we have a tele... If we're sitting here, and the counsel are in another area, another part of the corridor into another city, I mean, the counsel may all be there, but the decision-maker is by telephone, and that's precisely what it says. Thomas Christopher, present telephonically. Yes, and that was an accommodation we were happy to make, and there were several accommodations we made in preparation for that hearing. So what? What's that got to do with the merits of whether or not these people consented? The consent under George Day and Carpenters, and Judge Pregerson's dissent in Carpenters, is drawn from the respondent's conduct before the arbitrator. And I just want to make sure that the facts are clear and that no... He showed up to find out whether or not the arbitrator, what his decision was on jurisdiction. That decision did not spring out of whole cloth. That decision was based on written briefs that were fully argued by both parties and submitted. How did that happen to jurisdiction? They argued jurisdiction, and I think in Judge Pregerson's dissent in Carpenters, he's careful to point out, citing George Day, that objecting to jurisdiction, we cannot confuse that with arguing the issue of jurisdiction. When a party appears and fully argues and agrees to submit the topic of jurisdiction to arbitral authority, we then have an agreement to arbitrate it. Specifically on page 37 of the record, the arbitrator reads in the joint statement of issue to which the parties agree. Now the parties have agreed to the following issues for determination. One, does the arbitrator have authority to determine whether arbitral jurisdiction exists? This is exactly what happened in George Day. Parties agree to submit a topic to an arbitrator. It becomes a matter of agreement, so it falls into a matter of contract. It falls well within the Steelworkers Trilogy, the AT&T case. There is no case that prohibits parties from submitting the very question of arbitrability to the arbitrator, and that's exactly what happened here. So I just want to be careful that the facts are not mischaracterized. A lot went into this hearing before it took place. There were briefs submitted. The issue of arbitrality was argued. Joint exhibits were agreed upon, including the assignment agreements that were read into the record by the arbitrator that reflect that the two assignee companies here did, quote, assume all obligations of the signatory. Does the assignment clause, does it require the approval of the guild before being effectuated? No. It's very common in this industry for a production company to assign its rights and obligation to another company. My question is very simple. There was no requirement in the agreement that required the guild to consent to any assignment. That's correct, Your Honor. Is that correct? Under California or any other applicable law, could the guild have insisted upon that right? No, the guild wouldn't necessarily have known that a signatory was assigning its rights to a particular project. We're passing in the night. Is there anything in California or any other applicable law that prevented the guild from having as a part of its contract a requirement that any assignment be approved by it in advance? Because the contract is negotiated by the parties, that could be negotiated. Two elements of the contract do contemplate those circumstances. One was discussed by counsel earlier, or by Judge Pragerson, excuse me. Article 4 specifically says that the contract binds assignees who assume a substantial part of the business. And another article, I believe it's 65, which is not necessarily at issue here, holds a signatory accountable where it assigns away its obligations but those obligations aren't met. So the guild is very familiar with this evasive tactic where a company takes multiple forms in an effort to evade its obligations under the contract. That's the very reason I asked the question. Isn't there a contractual solution to this very kind of problem? And that is for the guild to require its approval of any assignment. And to tell the person that signs the agreement in the absence of our approval, which will not be unreasonably withheld or whatever, that you are bound. Just the simple fact that you, without our knowledge, assign this, assign your rights in whole or part to some other entity, does not release you, the signator, from responsibility under this agreement. That was within your client's ability, legally. Yes. And in fact, in large part, it is reflected in the current contract. What's your response to your opponent's argument that the agreement makes clear the difference between parties and assignees and, in fact, the arbitration clause is limited to parties? The arbitration clause is limited to anyone who has the obligation to arbitrate. And that obligation can spring from actually signing the collective bargaining agreement, being an assignee who, under the collective bargaining agreement, assumes a majority of that business, or, we know from George Day, through collateral agreements, such as, in this case, assignment agreements, or, third, by conduct in an arbitration context whereby parties consent to arbitrate the issue. What's your response to your opponent's argument that, at minimum, the case ought to be remanded to the district court to make factual findings about whether there was a specific objection or consent? This transcript that starts at page 34 was before the district court, and it sets forth all of the facts of the conduct at the arbitration hearing. But there are no specific fact findings in the district court's opinion, are there? Correct. The court's opinion says that it found on the facts that the parties consented. There is no recitation of the facts in the decision itself. How do you get consent out of a party that first says, I object to jurisdiction, and does it in writing, and then doesn't show up for the hearing on the merits? How do you get consent out of that? Under George Day, absolutely, that exact situation is addressed at page 1475 of that decision. It is what happened here is the parties sort of came out of step. They could have preserved their rights, and George Day provides exactly how they could have preserved their rights, and they didn't take any of those options. A, they could have simply refused to submit the topic of arbitrability to the arbitrator. Objecting by submitting the issue and then arguing it on the strength of the case law is not objecting and refusing to submit. That's what, under George Day, the companies are required to do. Or, as was referenced. The idea is you can't even put your toe in the water. Correct. Although George Day provides that so long as you don't put your toe in the water of the arbitrability issue, you can go ahead and litigate the merits before the arbitrator. It's the reverse of what the companies want this panel to hold here today. One cannot engage twice in the same arbitrability argument. First, before the arbitrator, and here it's undisputed. The issue was submitted to him for his decision. And then, once an unfavorable decision comes back, say, now I question his authority and get a second bite at the apple by going to federal court. They could have gone to federal court before this took place and gotten a declaratory or injunctive relief. George Day specifies that as another option for them. They didn't follow any of the options provided by this court. So what they should have done is, at least as it's framed in the arbitrator's opening remark, is that the Sweet Pea folks submitted the issue of arbitrage. They agreed to submit to the arbitrator with their objection. And what George Day says, that they could have avoided the problem by simply not giving the arbitrability question to the arbitrator for decision, merely voiced its objection so they should have stood on their briefs and not shown up, or they should not have said if they did say. I don't know whether they did say or not. I don't know if the arbitrator's statement is an accurate representation, which may be a problem. But they should have simply said in their objection that we object to the arbitrator deciding jurisdiction and then not show up at this arranged conference call. Yes, and I would submit under George Day they shouldn't have submitted written briefs either. The fact that they had to do something because it says they had to voice its objection on the arbitrability issue and state on the record that it was reserving that question for later judicial determination. So they could object and they could say we reserve it. Yeah, absolutely. And then not shown up. So they didn't say that, although that's what the arbitrator construed them as having done, he's explicit in saying that they reserved the right to raise it judicially. No. In fact, that's not a reflection of what the party said. That's the reflection of what the arbitrator read the federal case law to be. But he said that. That was his understanding. And I would invite this panel to look directly at the federal case law, not at the arbitrator's reading of it. I understand. Believe it or not. And we appreciate that. I thought I heard you say that early on when you first started that, oh, there was a provision or these folks took subject to the, when they took the assignment, they took subject to the arbitration provision. And something that I heard I thought was different from what we talked about with the other counsel. Remember how you started out? Are we talking about the collateral agreements? For example, the signatory signed the collective bargaining agreement. The signatory signed an employment contract with the writers that specifically referenced the MBA and all the terms they're under, and then after contracting to do that, assigned all of its rights and obligations to another Sweet Pea Company, which in turn assigned all of its rights and obligations to another Sweet Pea Company. But we also need to focus on the fact that the MBA and the employment contract are really the sum total of the rights and obligations these companies are transferring. This couldn't possibly have been an oversight. The very core of the employment contract is the fact that it's signed under the collective bargaining agreement. And, in fact, that employment contract, and this is in the transcript of the hearing, says Sweet Pea commits to being a WGA signatory throughout the period of performing the writing services and all relevant times thereafter, thereby conferring to the writers the impression that they were working with a signatory. And one of the most important things about being under an MBA contract for writers is that it entitles them to residuals. Residuals are for reuse. Reuse happens over many years. So whether the company is a signatory is important for sometimes decades afterwards. So they were relying on that contract, which told them they would be getting residuals, essentially. A contract with SEC or Sweet Pea. Correct. Their employment contract. And this is known in the industry? Yes. What in particular? Well, what you're talking about, the residuals, why people sign these agreements, and it would be an easy way to evade the requirement to receive or the right to receive residuals for writers if they could just make an assignment to another entity. Especially when that entity is essentially itself. What? Especially when that entity is essentially itself. The same principle is behind each of these three companies. Yeah. They're all engaged in the same business of making the same movie. Yeah. So it's going from one pocket to the other. Right. So the same people are involved, and so they have notice of all of this. Yes, and you're correct, Your Honor. The Guild is unfortunately very familiar with this scenario where companies attempt to pass obligations along, and everyone's pointing at someone else. And that's why there are provisions in the collective bargaining agreement we discussed. Assignees are included, and there's a provision that reverts back to the signatory where assignees don't hold up to their obligations. I'd like to come back to what the arbitrator seems to be saying here. He says at page 4 of the transcript, ER 37, he says, The parties have agreed on the issues for determination. Does the arbitrator have authority to determine arbitral jurisdiction over Sweet Pea and so on? And then he reviews the respondent's side and says, You say, the respondent, the appellant's here, First of all, that I do not have the authority to even address the question of whether these two respondents are proper parties. And second, you say that if I should reach that question, that these two respondents are not proper parties to this arbitration, and therefore I should issue an award. I understand that George Day posits other options or another option, but George Day also says that the problem in George Day was that they went ahead and argued both jurisdiction and the merits. And it's not clear to me that this is expressly excluded or included by George Day, and I'm wondering if we're not going to form over substance. It's pretty clear that the arbitrator understood that there was a challenge to arbitrability and that they were objecting to his ability to do it at all. Absolutely. So your statement is that they shouldn't have been there, that somehow, and I'm having a little trouble with the efficiency of that, but in any event, their mistake was even posing the first question? Yes. In fact, George Day at page 1475 says, whereas here the objection is raised, the arbitrability issue is then argued, and the case is submitted. Well, it's on the merits, too, though. And on the merits, too. Right. Well, we didn't get to the merits in this case. This was only on jurisdiction. Absolutely. Responding to an objection that he didn't have the authority at all. But the rationale doesn't rest on whether the merits are argued. The rationale rests, and George Day articulates this on the same page, we reason that a claimant may not voluntarily submit his claim to arbitration, await the outcome. No, no, no. That's on the merits. No, I. However, whereas here the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision. That's a merits component. It becomes readily apparent that the parties have consented. We are missing the merits aspect here. What they did, and what the arbitrator thought they were doing, whether he's misinterpreting federal law or not, was that they had objected. He was going to tell them he overruled their objection as to whether he had authority and went on to find that he had jurisdiction but said, You haven't waived that. Our interpretation differs from the one Your Honor just presented. Namely, that George Day says where submission of the merits of the dispute without reserving the question of arbitrability constituted implied consent. Well, there's clearly a reservation of the question. The question is whether they waived their reservation by showing up at this hearing. And if the arbitrator's construction is accurate, that they agreed to submit the issue of arbitrability to the arbitrator in the first instance. We respectfully disagree. The question was not reserved. It was argued and submitted. And, in fact, at the onset of the transcript, there is no statement of objections by counsel. And the argument. I can read the transcript. I understand. I understand your position, and I'm thinking through mine. Thank you. I appreciate that. It's not win or lose at this point. What you're saying is it's the fact that they challenged the jurisdiction and they participated in that. That's enough. Yes, absolutely. It's that age-old cliche of two bites of the apple. Arguing arbitrability, submitting the issue, consenting to the arbitrator's authority to decide it, getting an unfavorable result, and then deciding, okay, well, we don't want to play anymore because we only wanted to win. In fact ---- What case is there besides George Day that is exactly like this case, where the only issue that went to the arbitrator was jurisdiction? There isn't one. George Day ---- It's an age-old circumstance, but this is the only case. Okay. Thank you. They knew that the arbitrator was going to decide the merits. Right. When they left. Right. Right. Absolutely. There's not a dispute about that. They're just arguing they're not the correct party. Okay. Thank you, Your Honors. Very briefly, Your Honors, it seems to be the guild's position that ---- We know what their position is. The arbitrator's position that you submitted to the arbitrator the question ---- No. We did not. There's only one comment in the transcript that you're reading there in which the arbitrator says we did that, but he's saying that in a context where he's saying, look, the record is closed. I don't want to hear you talk anymore. I'm going to issue my opinion now, and here's what I'm going to decide. What did you say in your motion papers? We objected to his exercising jurisdiction over us, as he says in his preface. That's what we said, that in his preface where he said we say you can't do this, and what he did is he said here's what I'm going to decide now, this issue, not the merits. That's why he makes the decision of this is what the parties agreed I'm going to decide. But what we did is we challenged that. We never consented to that. And, in fact, he recognized that. I know. I'm just trying to understand what you set up. You didn't object and say, no, Your Honor, we are not, we have not agreed to submit the issue to you for decision. Because what we did in our papers, in our briefs that were filed, which is all that we filed, and then what you have there is his opinion. So that's already been done. And in his opinion, he starts off and recognizes that that's already been done. And what the guild is saying, in effect, is we had a right to object. We just couldn't object vigorously or explain what our grounds were. Where do you draw the line on that? She's saying that George Day drew the line, and you went farther than you should have. We preserved our rights far better than they did in George Day, and the arbitrator himself recognized that. And the question really is, is there clear and unmistakable waiver on our part by vigorously So I understand, Olin. Okay. We're just arguing over a narrow point. Thank you, Your Honor. But this is a, this would be a, this would be a very facile way to, to, to avoid and obtain residuals. No, Your Honor, because the matter still is to be decided by the district court on remand on the merits as to whether we're bound by the arbitration agreement. And if we're not, there's still a court of law. What we're saying is we have the right to have this heard in a court of law. Yeah, but this is, but it's an assignment that had not been made, and SEC would have gone ahead and produced the film and all that. Then these folks, there'd be no question, they were entirely residuals. Is that right? The contents of the contracts. Is that right? It depends on the contracts, Your Honor. The contents of the contracts are not before us. The contract with SEC and, and, and the guild. Did that, did that, did the writers have, they have a right to get residuals? The contract, under the guild agreement, yes. Under the, under the, but the question of the contracts that my clients are parties to is not before this court now, and that's something that I would like a chance to argue before the district court, which didn't reach that issue. So it's an easy way to, to, to evade that. No. Sure it is. No. If we wind, if when they have that hearing and we present our case and they present theirs, the district court will make a decision based on the contents of those contracts. It's, it's, it's not just, just a given that, oh, there's liability here based on those contracts. That's not before this court now. We haven't had a chance to argue that before the district court. The district court didn't reach it. It just said, you consented. We say we didn't. And therefore, there should be a remand. But look at the arbitration provisions of the guild agreement. Non-signatories are not part of the arbitration proceeding. If they wanted us to be part of the arbitration proceeding, they could have easily have said, arbitration proceedings will bind all parties, all signatories and non-signatories, or all parties who are bound by this. But it didn't. It says it is limited to the guild and companies, which is defined as signatories. Thank you. So how about signees? They're excluded. They may be bound by other provisions, but they're not bound by the arbitration provision. All right. Thank you, Your Honor. All right. For this session, the court is adjourned. All rise. This court for this session stands adjourned. Oops. Let's just roll off. Take that one there. Thank you.
judges: Pregerson, Hawkins, Fisher